## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BARBARA B. STROUD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-05-1191-T** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I) & 423, 42 U.S.C. § 1382c(a)(3). The Commissioner has answered and filed the administrative record (hereinafter Tr. ____). Both parties have briefed their respective positions, and thus the matter is at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be reversed and that the matter be remanded to the Commissioner for further administrative proceedings.

### I.     PROCEDURAL HISTORY

Plaintiff filed her applications for disability insurance benefits and supplemental security income benefits on February 20, 2002, alleging a disability since February 7, 2002. Tr. 57-60, 810-12. Plaintiff's alleged disabling conditions were reflex sympathetic dystrophy, fibromyalgia, thyroid disease, kidney and liver disease, and mitral valve prolapse. Tr. 75. The applications were denied on initial consideration and on

reconsideration at the administrative level.  Tr. 33, 34, 35-37, 39-40, 813, 814-15, 816,

817-18.   Pursuant to Plaintiff's request, a hearing de novo was held before an

administrative law judge on October 22, 2003.  Tr. 41, 823-66.  Plaintiff appeared with

counsel and offered testimony in support of her applications.  Tr. 825, 827-59.  A

vocational expert testified at the request of the administrative law judge.  Tr. 51, 859-65.

The administrative law judge issued his decision denying benefits on November 24,

2003.  Tr. 18-20, 21-29.  On August 10, 2005, the Appeals Council denied Plaintiff's

request for review .  Tr. 7-10, 11.  Thus, the decision of the administrative law judge

became the final decision of the Commissioner. Id.

## II.    STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of

review as follows:

> We review the agency's decision to determine whether the factual findings
> are supported by substantial evidence in the record and whether the correct
> legal standards were applied.   Substantial evidence is such relevant
> evidence as a reasonable mind might accept as adequate to support a
> conclusion. However, a decision is not based on substantial evidence if it
> is overwhelmed by other evidence in the record or if there is a mere
> scintilla of evidence supporting it.  The agency's failure to apply correct
> legal standards, or show us it has done so, is also grounds for reversal.
> Finally, because our review is based on the record taken as a whole, we will
> meticulously examine the record in order to determine if the evidence
> supporting the agency's decision is substantial, taking into account
> whatever in the record fairly detracts from its weight.  However, we may
> neither reweigh the evidence nor substitute our discretion for that of the
> Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and

citations omitted).  The Commissioner follows a five-step sequential evaluation process

to determine whether a claimant is disabled.  Williams v. Bowen, 844 F.2d 748, 750-52

(10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four.  Id. at 751 & n.2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given her age, education, and work experience.  Id. at 751.

**III.   ANALYSIS**

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520 and § 416.920.  Tr. 22.  He first found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  Tr. 22, 28.  At steps two and three, the administrative law judge found that Plaintiff suffers from reflex sympathetic dystrophy; fibromyalgia; thyroid, kidney, and liver problems; and hand and feet problems, including toes that curl up, and that these impairments though severe are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  Tr. 23, 25-26, 29.  At the fourth step of the sequential evaluation process, the  administrative law judge found that Plaintiff has the residual functional capacity (RFC) for light work, with only occasional stooping and not working around machinery or heights.  Tr. 27, 29.  He also found that she would have a mild to moderate level of discomfort and disorientation.  Tr. 27. Based upon this RFC, the administrative law judge found that  her past relevant work as a data entry clerk, waitress, and clerk/cashier did not require the performance of work-related activities precluded by her residual functional capacity.  Tr. 28, 29.  Thus, he found that Plaintiff was not disabled

at any time through the date of decision and was not entitled to disability insurance benefits or supplemental security income benefits.  Tr. 28, 29.

A.    **ISSUES ON APPEAL**

Plaintiff raises three issues on appeal.  First, she claims that the administrative law judge erred as a matter of law in failing to use the psychiatric review technique with respect to her mental impairments.  Plaintiff's Opening Brief, p. 7.  Second, she claims that the administrative law judge erred as a matter of law in failing to develop the record with regard to her mental impairments.  Id. at 9.  Third, she claims that the RFC is not supported by substantial evidence since it did not include any nonexertional limitations related to anxiety or depression, migraine headaches, or her episodic dystonic movements of the entire thorax and neck.  Plaintiff's Opening Brief, p. 12.

1.  **FAILURE TO USE PSYCHIATRIC REVIEW TECHNIQUE**

Plaintiff first alleges that it was error for the administrative law judge to fail to use the technique established by 20 C.F.R. § 404.1520a and § 416.920a to analyze her mental impairment. Plaintiff's Opening Brief, p. 7-8.  The Commissioner responds that Plaintiff has shown no evidence from the relevant time period indicating the existence of a medical impairment, "much less a severe mental impairment."  Commissioner's Brief, p. 4.  First, she claims that a hospital stay in which Plaintiff was diagnosed with acute anxiety disorder and depression occurred eighteen months before the onset date, and was for severe chest pains with severe anxiety, and that Plaintiff has cited no objective medical evidence from the relevant period indicating the presence of a mental impairment.  Commissioner's Brief, p. 5-6.  Second, the Commissioner contends that

Plaintiff told the consultative examiner that she had been diagnosed with psychological disorders that had been in fact due to a thyroid condition that had gone undiagnosed for seven years. Id. at 4. Finally, the Commissioner states that the administrative law judge may discount symptoms such as those testified to by Plaintiff at the hearing when they are not supported by objective correlative evidence. Id. For these reasons, the Commissioner contends, the administrative law judge was correct in not using the psychiatric review technique to evaluate Plaintiff's alleged mental impairment.

In cases where there is evidence of a mental impairment, Social Security regulations require the application of a specific "technique" for determining first, whether there is a medically-determinable mental impairment and if so, whether that impairment is "severe." 20 C.F.R. § 404.1520a(b)-(d)(1); § 416.920a(b)-(d)(1); see Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir. 1991). Where there is an allegation of mental impairment but no medical evidence of such impairment, or where there are no allegations of mental impairment and only "minimal references" to potential mental or emotional problems in the medical record, the duty to follow the evaluation procedure at § 404.1520a and § 416.920a is not triggered. See Sloan v. Shalala, No. 93-6314, 1994 WL 325416, at *4 (10th Cir. July 7, 1994) (procedure not triggered by occasional mention in general medical notes that claimant was "depressed" or "anxious" and testimony by claimant that she was "nervous").[1] For the determination of whether a medically determinable mental impairment is "severe," the technique requires rating the degree of limitation in three functional areas - (1) activities of daily living: (2) social functioning; and (3)

---

[1]This and any other unpublished decision referenced in this Report and Recommendation is cited for its persuasive value in accordance with Tenth Circuit Rule. 36.3(B).

concentration (or persistence or pace) - using a five-point scale: "none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4); § 416.920a(c)(4).  In addition, a fourth functional area - episodes of deterioration or decompensation in work or work-like settings - must be rated on a four-point scale: "none, one or two, three, four or more." Id.

The regulations also require documentation of the application of this technique utilizing a "standard document" (Psychiatric Review Technique ("PRT") form) at both the "initial and reconsideration levels of the administrative review process." 20 C.F.R. § 404.1520a(e) and § 416.920a(e); see Cruse v. United States Dep't of Health & Human Services, 49 F.3d. 614, 617 (10th Cir. 1995). At the administrative law judge and Appeals Council levels of review (in those cases where the Council issues a decision) a standard document is not required, but the application of the technique must be documented "in the decision." 20 C.F.R. § 404.1520a(e); § 416.920a(e).  That is, any "written decision issued by the administrative law judge or Appeals Council" must:

> show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments(s ).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(2) and § 416.920a(e)(2) (emphasis added).

In addition to these regulatory requirements, when the administrative record of a claim contains evidence of a mental impairment, the Commissioner "cannot determine that the claimant is not under a disability without first making every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." Andrade

6

v. Secretary of Health and Human Services, 985 F.2d 1045, 1049 (10th Cir. 1993). However, in Bernal v. Bowen, 851 F.2d 297, 302 (10th Cir. 1988), the Tenth Circuit held that neither the Commissioner nor the administrative law judge "has the absolute duty to have a psychiatrist or psychologist complete the [PRT and Mental RFC] reports"[2] and where there is no "evidence seriously challenging the [administrative law judge's] final determination regarding the severity of [a claimant's mental] impairments" it is not error for the administrative law judge to apply the technique at 20 C.F.R. § 404.1520a without the assistance of a mental health professional. In Andrade, the Tenth Circuit reaffirmed Bernal but held that where the technique for review of evidence of a mental impairment has not been applied and documented at the initial or reconsideration levels of review, and evidence of a medically determinable mental impairment is presented to the administrative law judge for an initial determination, it may be an abuse of discretion for the administrative law judge to evaluate the evidence of a mental impairment without the assistance of a psychologist or psychiatrist. Andrade, 985 F. 2d at 1050.

In this case it is undisputed that the administrative law judge did not apply the psychiatric review technique. Thus, the only question is whether the duty to engage in the technique was triggered. The undersigned finds that it was, and that this case must be remanded so that the special procedures applicable to the evaluation of mental impairments can be performed.

---

[2]At the time of the decision in Bernal, the administrative law judge was required to complete a PRT form and attach it to the decision where there was evidence of a mental impairment. As noted above, the regulations have subsequently been revised and now allow the administrative law judge to address the information required by the form in the text of the decision itself. 20 C.F.R. § 404.1520a(e)(2) and § 416.920a(e)(2).

In this case, Plaintiff included in her disability interview outline that loud sounds and noises/people bother her, and that she has trouble saying/pronouncing what she is thinking and reading. Tr. 68. She answered affirmatively the question asking whether she had been seen by a doctor/hospital/clinic for emotional or mental problems that limit her ability to work, Tr. 77, and in her reconsideration disability report stated that she was having difficulty concentrating, was "spaced out," very emotional, and having trouble remembering things. Tr. 94. She stated on that same report that due to "increased memory loss, dyslexia, anxiety, temporary amnesia, and stress due to no income I've started seeing a counselor in hopes I can handle or cope better." Tr. 97. In a medication report, she stated that she had been prescribed Doxepin[3] on May 13, 2003, for "nerves/stress." Tr. 103. At the hearing, Plaintiff testified that she suffered from confusion and problems with concentration, which she added was supposedly related to her long-misdiagnosed thyroid disorder. Tr. 836-37, 848. When asked whether she suffered from anxiety or depression problems, she answered "that and - - [confusion]." Tr. 837. Plaintiff testified that due to the thyroid condition going diagnosed so long, she has trouble reading because her mind "kind of reverses it." Tr. 848. She also testified that she still suffers from the anxiety disorders diagnosed in 2000, in that she becomes "overwhelmed being around people," has a bad memory, gets lost, and cannot do simple mathematical calculations without pen and paper. Tr. 854-56. When asked by the administrative law judge what impairment bothers her the most, Plaintiff answered the

---

[3]Doxepin is "an antidepressant...used to treat depression and anxiety. MedlinePlus, Internet Service of the U.S. National Library of Medicine (accessed Sept. 21, 2006).

"problems I have with my mind." Tr. 836. The administrative law judge seemed somewhat surprised by Plaintiff's response to that question. He commented that it did not appear that Plaintiff had raised a mental impairment in her applications, and that no psychologist or psychiatrist had reviewed her claim. Tr. 837. However, the administrative law judge said he would examine the claim. Tr. 837. He later again commented that Plaintiff's case had not been fully evaluated as he did not have any evaluation on the alleged mental impairment. Tr. 842. However, without citing to any medical opinion or stating any medical basis upon which he relied, the administrative law judge ended up discounting Plaintiff's mental impairment claim because it was "new" and she lacks credibility. Tr. 27.

The medical record contains the following references to anxiety. On March 10, 2000, Plaintiff went to SE Area Health Center with multiple complaints, including increased anxiety. The notes state "unable to control the anxiety at this point and is here today with that major concern and wishes to determine if there are other problems at this time." Tr. 789. At that time, Plaintiff had an abnormal EKG and had signs/symptoms of a thyroid crisis, and it was suggested that she be transported immediately to the emergency room. Tr. 790. A follow-up note from SE Area Health Center on March 20, 2000, states "anxiety resolved" as part of the assessment. Tr. 787. However, on April 17, 2000, the notes say "doing well besides nerves." Tr. 786. Again on July 17, 2000, it is noted that she is doing well except for anxiety. Tr. 780. On August 7, 2000, Plaintiff went to the emergency room at Mercy Health Center "after a few days of increasing and almost continuous chest pain . . . associated with severe anxiety." Tr. 679. The

examining physician was "absolutely convinced" her condition was noncardiac by her description and "almost assuredly due to an acute anxiety disorder and panic attacks." Tr. 679-80.  The doctor further opined that "[m]ost of her problems are psychiatric in nature," and noted that although he "recommended psychiatric referral," Plaintiff refused at that point.  Tr. 680.  Plaintiff left against medical advice the following day.  Tr. 680. The discharge diagnoses included acute anxiety disorder and depression.  Tr. 679. After that time, there are records of sixteen medical visits, most involving colds, ear infections, and the like, none mentioning any complaints relating to anxiety, depression, or the mental symptoms referenced by Plaintiff in her application materials or testimony.  Tr. 754-56 (toothache), 758 (kidney stones), 759 (cold, chest pain), 760 (cold, chest pain), 761 (tooth infection), 763 (nose bleed, body aches, headache), 764 (sinusitis, bronchitis), 765 (acute bronchitis), 768 (resolving pneumonia), 769 (COPD exacerbation), 771 (ear infection), 772 (cold/cough), 773 (reactive airway disease with cough/cold), 774 (earache), 775 (cold; foot pain), 776 (cold, bronchitis).   At the consultative examination by Vallis Anthony, M.D.,  Plaintiff did give a history of various diagnoses, including psychological disorders, "which she now states was really in fact due to a thyroid hyper function which went undiagnosed for 7 yrs." Tr. 745. Dr. Anthony commented that although Plaintiff stated she had medical records six inches thick, that he had no medical records on which to refer. Tr. 745.  Upon his physical exam, Dr. Anthony described Plaintiff as a "very thin talkative female who seems a bit anxious."  Tr. 746.

The Commissioner relies heavily on her allegation that the only medical records of Plaintiff's mental impairment occurred before the onset date.   However, the medical

evidence in the record shows that Plaintiff's anxiety resulted in one hospitalization and at least one doctor's recommendation for psychiatric care less than eighteen months prior to her application for benefits.[4]  This together with Plaintiff's testimony and written claim that she had been prescribed anti-anxiety medication only five months before the hearing, and the consultative examiner's own observation of Plaintiff as "a bit anxious" leads the undersigned to conclude that the Commissioner should have employed the special technique established by the regulations for the evaluation of mental disorders. Moreover, the administrative law judge appears to have included a limitation related to Plaintiff's allegations of a mental impairment in the form of confusion in his residual functional capacity assessment: "she will have a mild to moderate level of discomfort and *disorientation*."  Tr. 27.  Without use of the technique, the purpose of which is in part to "organize and present ... findings in a clear, concise, and consistent manner,' it is impossible to see how the administrative law judge evaluated Plaintiff's mental impairments, especially so as to arrive at a  limitation apparently related to her alleged symptoms.  <u>See</u> 20 C.F.R. §§ 404.1520a(a)(3), 416.920a(a)(3).

This case is distinguishable from those in which there is only an occasional mention in general medical notes that claimant was "depressed" or "anxious" or there was testimony by claimant that she was "nervous."  <u>Sloan v. Shalala</u>, No. 93-6314, 1994 WL 325416, at *4 (10th Cir.  July 7, 1994).  As noted above, emergency hospitalization was recommended on one occasion, and actually occurred on another due to Plaintiff's

---

[4]Moreover, the Commissioner herself relies on a medical record even earlier than two in which anxiety is either diagnosed, referenced, or treated to support her position – a position somewhat inconsistent with her claim that records before the onset date are not relevant.  <u>See</u> Commissioner's Brief, p. 4 (referencing March 2000 office visit in which "anxiety resolved" is noted).

uncontrollable anxiety.  It is also distinguishable from  Bernal v. Bowen, 851 F.2d 297, 302 (10th Cir. 1988), in which the administrative law judge did in fact conduct the psychiatric  review technique, albeit without the assistance of a medical expert.

Because it is recommended that the case be remanded for the Commissioner to apply the psychiatric review technique, and in effect consider Plaintiff's alleged mental impairment in the first instance, it would be inappropriate to address the issue of whether a consultative examination is required. On remand, the administrative law judge must determine whether to obtain a consultative examination. Cox v. Apfel, No. 98-5203, 1999 WL 820215, *3 (10th Cir. Oct. 14, 1999) (citing Hawkins, 113 F.3d at 1167 (10th Cir.1997)) (holding that administrative law judge should order consultative examination if the claimant has shown "a reasonable possibility that a severe impairment exists" and the examination would be "necessary or helpful to resolve the issue of impairment."). It would also be inappropriate to address whether the administrative law judge's residual functional capacity finding is supported by substantial evidence until the Commissioner has considered Plaintiff's alleged mental impairments in accordance with the agency's own regulations.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decisions of the administrative law judges, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of Social Security Administration be reversed and the matter remanded for further administrative proceedings consistent with this Report and

Recommendation.  The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by November 8, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 19th day of October, 2006.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE